# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 9, 2009          Decided July 27, 2010

No. 07-3138

UNITED STATES OF AMERICA,
APPELLEE

v.

KHALED MOHAMED SHABBAN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 06cr00290-01)

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Emily C. Scruggs*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese III*, Assistant U.S. Attorney.

Before: GARLAND and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:    On June 21, 2007, a jury convicted Khaled Shabban of international parental kidnaping. Shabban challenges the sufficiency of the evidence supporting his conviction, and he seeks a remand for an evidentiary hearing on his claim that he was denied effective assistance of counsel. We reject Shabban's challenge to his conviction because we find the evidence sufficient to persuade a reasonable juror of his guilt beyond a reasonable doubt.    Because the trial record does not conclusively show whether Shabban is entitled to relief on his ineffective assistance claim, we follow our general practice and remand for an evidentiary hearing.

I

Viewed in the light most favorable to the government, *see United States v. Dykes*, 406 F.3d 717, 721 (D.C. Cir. 2005), the evidence is as follows.    Shabban, an Egyptian national, met Araceli Hernandez, a Mexican national, in Washington, D.C. They had a romantic relationship, during which Hernandez became pregnant.    Their child, A.K.S., was born in August 2001. Shortly thereafter, Shabban and Hernandez, who lived in separate residences, entered into a consensual custody order in the Superior Court of the District of Columbia.    Under the order, Hernandez had primary physical custody, Shabban had unsupervised visitation rights, and both agreed that "the child shall not be removed from the country without the express[] written consent of both parties."    Trial Tr. 203 (June 19, 2007).

Approximately three years later, Shabban made preparations to take his son to Egypt without Hernandez's permission.    He sold his coffee business for $35,000 without telling Hernandez; had his roommate, Hossam Barakat, pay him the security deposit for their apartment; and asked Barakat about

placing Barakat's name on the lease. Shabban also told Barakat that he planned to take A.K.S. to Egypt, that he had purchased airline tickets to do so, and that Hernandez "d[id]n't care if he [Shabban] took [A.K.S.] to Egypt." *Id.* at 313.

On the morning of November 21, 2004, as was her regular practice, Hernandez dropped A.K.S. off with Shabban on her way to work. Shabban then told Barakat that, with Hernandez's consent, he had decided to take A.K.S. to Canada rather than Egypt. Later that morning, Shabban called Hernandez to ask if he could take A.K.S. to an amusement park, and Hernandez agreed. When Hernandez tried to call Shabban that afternoon, he did not answer. She went to Shabban's apartment, but to no avail. Afterward, she called Shabban every thirty minutes. Although he would usually answer such calls, this time he did not. Around 6 p.m., Shabban called Barakat, told him he was bringing a girlfriend home, and asked him to stay away from the apartment until 10 p.m., which Barakat did.

That evening, without warning to or permission from Hernandez, Shabban boarded a flight and took A.K.S. to Cairo. Although Shabban's name was listed on A.K.S.'s birth certificate and the custody order as "Khaled Mohamad Shabban," "Khaled Shabban," or "K. Shabban," he traveled to Cairo on a passport that listed his name as "Mohamed Rashad Mohamed Mahmoud Shabban." The flight manifest, ticket receipt, and trip itinerary all listed Shabban's name as "Khaled Rashad."

A week after Shabban disappeared, he called Hernandez and told her that he and A.K.S. were in Egypt. Hernandez asked: "[W]hy [did] you d[o] that[? Y]ou didn't tell me anything." Trial Tr. 346 (June 19, 2007). She then contacted the authorities. Over the next 22 months, Shabban and Hernandez had numerous telephone conversations, many of

which Hernandez recorded with the help of the FBI. In early conversations, Shabban asked Hernandez to come to Egypt, which she said she could not do because it meant abandoning her pending application for a green card. He also mentioned that he was thinking about bringing A.K.S. back, but he did not make any arrangements. During their conversations, Shabban referred to their son's difficulty in learning to communicate, and told Hernandez he had taken him to Egypt so that he could learn a single language, Arabic. He expressed remorse for taking A.K.S. without permission, telling Hernandez: "I don't know how I'm going to look at you." Tel. Conversation Tr. 9 (Sept. 22, 2006). During another conversation, he told her to "[b]e good[, d]on't be bad," which she believed was a request not to go to the police or the court. Tel. Conversation Tr. 16 (Nov. 7, 2005).

Upon the FBI's advice, Hernandez began asking Shabban to return A.K.S. to the United States in time for the next school year. In mid-2006, Hernandez and Shabban agreed that a family friend would fly to Cairo, meet A.K.S. and Shabban, and bring A.K.S. to the United States on a return flight. Because Shabban was late to the meeting with the family friend, they failed to connect, and she returned to the United States alone. Later, Shabban made preliminary arrangements for an airline employee to accompany A.K.S. to the United States, but that effort was also unsuccessful.

Shabban next made arrangements to bring A.K.S. back to the United States himself. Before leaving Egypt, he told Hernandez, "[d]on't break my life," Tel. Conversation Tr. 2 (Sept. 22, 2006), which she understood to mean that she should not tell the police of his plans. On September 25, 2006, now traveling on a visa that listed his name as "Khaled Mohamed Rashad Rashad Mahmoud," Shabban arrived in New York and was arrested at the airport. After his arrest, he told the FBI that

he took A.K.S. to Egypt because A.K.S. was having "difficulty with learning how to converse or learning how to communicate." Trial Tr. 262 (June 19, 2007). He admitted that, "if he had asked Ms. Hernandez for permission, she would have said no." *Id.* at 263.

On September 28, 2006, a grand jury charged Shabban with international parental kidnaping, in violation of 18 U.S.C. § 1204. Trial commenced on June 18, 2007. After the jury returned a guilty verdict, the district court sentenced Shabban to 36 months' imprisonment. Shabban timely filed the instant appeal.

II

Shabban's first argument is that the evidence was insufficient to support his conviction. Our review of such a claim is limited: We must accept the jury's guilty verdict if we conclude that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "In making [that] determination, the prosecution's evidence is to be viewed in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *Dykes*, 406 F.3d at 721 (internal quotation marks omitted).

The International Parental Kidnaping Crime Act provides:

> Whoever removes a child from the United States, or . . . retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both.

18 U.S.C. § 1204(a).  Shabban's contention is that the evidence was insufficient to prove that he intended to obstruct the lawful exercise of Hernandez's parental rights.  Instead, he maintains, the evidence showed that he was concerned that his son was having difficulty learning to speak because he was exposed to three languages:  his father's Arabic, his mother's Spanish, and his school's English.  Shabban contends that his intention was to place the child in an environment in which he could improve his speech by hearing only one language.

As Shabban concedes, evidence that a defendant had multiple intentions does not mean there was insufficient evidence of the requisite statutory intent.  *See* Oral Arg. Recording at 22:25-22:48.[1]  And in this case, the evidence -- as set forth in Part I above -- was sufficient for a reasonable juror to find, beyond a reasonable doubt, that Shabban removed or retained A.K.S. with intent to obstruct the lawful exercise of Hernandez's parental rights.[2]

---

[1]*See also United States v. Julian*, 427 F.3d 471, 485 (7th Cir. 2005) (holding that under the Mann Act, which bars interstate or foreign transportation of an individual "with intent that such individual engage in prostitution," 18 U.S.C. § 2421, the government need not prove that the defendant acted "with the *sole* or *principal* intent" that the individual engage in prostitution, as long as that intent was a significant one); *United States v. Gooding*, 473 F.2d 425, 428 (5th Cir. 1973) (holding that under the Travel Act, which prohibits interstate travel "with intent to" commit specified unlawful acts, 18 U.S.C. § 1952(a), the defendant may have the requisite intent even if his "travel is motivated by two or more purposes, some of which lie outside the ambit of the Travel Act").

[2]The district court instructed the jury that, to find Shabban guilty, "you must determine beyond a reasonable doubt that he intended to obstruct the lawful exercise of parental rights."  The court further instructed that:

Shabban and Hernandez were subject to a custody order that clearly established Hernandez's parental rights.[3] Under that order, she had "primary physical custody" of the child, and A.K.S. could "not be removed from the country without the express[] written consent of both parties." Trial Tr. 203 (June 19, 2007). Beginning in 2004, Shabban made preparations to take A.K.S. to Egypt in a fashion that could reasonably be described as deceptive, and from which the jury could have inferred an intent to obstruct Hernandez's parental rights. Without telling Hernandez, he sold his business and made arrangements to transfer his apartment. And he evidenced consciousness of guilt by falsely telling his roommate that Hernandez did not care if he took A.K.S. to Egypt.

On the morning of his departure for Egypt, Shabban again lied to his roommate, telling him that he had decided to take A.K.S. to Canada and that Hernandez had consented to the trip. Later that morning, he lied to Hernandez, asking her permission to take A.K.S. to an amusement park. Thereafter, he avoided her calls, told his roommate to stay away from the apartment,

> [Y]ou may infer the defendant's intent from the surrounding circumstances. You may consider any statement made or acts done or omitted by the defendant [a]nd all other facts and circumstances received in evidence which indicate the defendant's intent. You may infer, but are not required to, that a person intended the natural and probabl[e] consequences of acts knowingly done or omitted.

Trial Tr. 463 (June 20, 2007). Shabban did not object to this instruction in the district court and does not do so here.

[3]The statute defines "parental rights" as "the right to physical custody of the child -- (A) whether joint or sole (and includes visiting rights); and (B) whether arising by operation of law, court order, or legally binding agreement of the parties." 18 U.S.C. § 1204(b)(2).

and boarded a flight to Egypt. In making the trip, he used a passport and ticket with variations of his name that were different from those he had used previously -- suggesting an intent to prevent Hernandez from learning of or stopping his departure. Hernandez testified that Shabban had never sought or received her permission to take A.K.S. out of the country, nor given her any warning that he intended to do so.

During the 22 months Shabban spent in Egypt, he provided further evidence from which the jury could have inferred that he removed A.K.S. from the United States, or retained him in Egypt, with the intent to prevent Hernandez from exercising her right to physical custody of the child. During one telephone conversation, he told Hernandez that "I don't know how I'm going to look at you," Tel. Conversation Tr. 9 (Sept. 22, 2006), evidence that he knew he had taken A.K.S. without her consent. The two abortive efforts he made to return A.K.S. to the United States in mid-2006 could also be interpreted as evidence of intent to unlawfully retain the child in Egypt.

When Shabban finally did arrange to bring A.K.S. back to the United States, he made further remarks that a jury could have interpreted as consciousness of guilt, traveled on a passport with yet another variation of his name, and admitted to the FBI that he knew Hernandez would not have agreed to let him take the child to Egypt.

This evidence, taken together (or even in significant part), was sufficient to sustain the jury's verdict. Accordingly, we reject Shabban's challenge to his conviction.

### III

Shabban's second contention is that his trial counsel was constitutionally ineffective for failing to conduct an adequate

investigation and failing to call witnesses who would have supported his defense. This is an argument he raises, with new counsel, for the first time on appeal. Pursuant to this circuit's decision in *United States v. Rashad*, 331 F.3d 908 (D.C. Cir. 2003), Shabban seeks a remand to the district court for an evidentiary hearing on his claim.

In order to succeed on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must show two things: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Rashad*, we explained that, "[d]ue to the fact-intensive nature of the *Strickland* inquiry and the likelihood, when a defendant asserts his sixth amendment claim for the first time on direct appeal, that the relevant facts will not be part of the trial record, . . . this court's general practice is to remand the claim for an evidentiary hearing unless the trial record alone conclusively shows that the defendant either is or is not entitled to relief." 331 F.3d at 909-10 (internal quotation marks omitted).

Shabban asserts that he "gave his attorney information that, if pursued, would have undermined the allegation that he acted with the specific intent to obstruct Ms. Hernandez's parental rights." Appellant's Br. 14. Among other things, Shabban avers, he told his attorney that: (1) his name appears differently in different documents because of the difficulties in westernizing Arabic names, not because he was trying to hide anything, a misunderstanding that he suggests an expert witness could have dispelled; (2) he enrolled A.K.S. in speech therapy in Egypt, demonstrating that he traveled there because of his son's communication problem; (3) he registered A.K.S. at the U.S. embassy as an American citizen abroad, showing that he was not trying to evade U.S. authorities; (4) the family friend who traveled to Egypt to escort A.K.S. home would have testified

that it was not Shabban's fault that they failed to connect for the transfer, showing that Shabban did not intend to keep A.K.S. abroad; (5) a subsequent attempt to return A.K.S. to the United States was thwarted through no fault of Shabban's when a family member stole A.K.S.'s passport, for which Shabban brought criminal charges, again showing the absence of intent to keep A.K.S. in Egypt; and (6) he returned to the U.S. despite the fact that another friend told him the police were asking about A.K.S.'s whereabouts.

Given Shabban's allegation that his trial counsel "refused to investigate this specific information, or to call witnesses on his behalf," Appellant's Br. 14, we can hardly say that "the trial record alone conclusively shows" that he has failed to satisfy *Strickland*'s first prong, deficient performance. As to the second prong, prejudice, the government argues that most of the information Shabban recites relates to his conduct after he departed the United States. That is true, but it is also true of much of the evidence the government itself offered to prove Shabban's intent. Mindful of the fact that Shabban's trial counsel presented no witnesses at all, we cannot say that "the trial record alone conclusively shows that the defendant either is or is not entitled to relief" under the Sixth Amendment. *Rashad*, 331 F.3d at 910 (internal quotation marks omitted). Accordingly, we remand this case to the district court for an evidentiary hearing. *See id.* at 909-10.

## IV

For the foregoing reasons, we reject Shabban's challenge to his conviction but remand the case to the district court for an evidentiary hearing to determine whether he was denied the effective assistance of counsel.

*So ordered.*