# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 20, 2010　　　　Decided January 28, 2011

No. 05-3100

UNITED STATES OF AMERICA,
APPELLEE

v.

ANTHONY D. ANDERSON,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00343-01)

———

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Lauren H. Dickie*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III*, Assistant U.S. Attorney.

Before: BROWN, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Anthony D. Anderson appeals his conviction and 235-month sentence for possession of a firearm and ammunition by a felon. *See* 18 U.S.C § 922(g)(1). He alleges he received ineffective assistance of counsel and the district court committed error at sentencing. We remand for an evidentiary hearing on Anderson's Sixth Amendment claim, because the record is insufficient for us to decide whether he was prejudiced by any mistakes his lawyer may have made. We vacate Anderson's sentence and remand for resentencing because, given the expansive language of 18 U.S.C. § 3661, it was plain error for the district court to conclude it was precluded from considering Anderson's allocution at sentencing.

I

Officers of the Metropolitan Police Department stopped a vehicle Anderson was driving when he ran a stop sign. His daughter's fiancé, Terrence Saunders, was in the passenger seat. Officers James Boteler and David Chumbley testified they thought Saunders might be ingesting drugs, and they removed him from the car before Boteler asked Anderson for his license. At that point, Boteler says, Anderson reached to the floor between his legs, and Boteler opened the car door in time to see Anderson holding a semiautomatic handgun just off the floor. As Boteler pulled Anderson out of his car, the manual transmission vehicle somehow lurched forward and struck the car parked just ahead of it.[1] The gun was the only evidence

---

[1] Officer Boteler testified Anderson's right hand "somehow touched the gear shift or manipulated the gear shift in some manner in which

found in the car, no fingerprints were lifted from the gun, and no evidence was recovered from Anderson or Saunders.

At the first status conference in the district court, Anderson's trial counsel admitted he had not calculated the sentence Anderson faced under the Sentencing Guidelines, but said he and his client had "decided to go to trial" anyway. Tr. 9/7/2004, at 2. The district court ordered Anderson's lawyer to calculate "what [Anderson] would be facing" under the Guidelines so that there would be "no misunderstanding [about] what [his] choices [were]." *Id.* at 6. At a subsequent motions hearing, trial counsel still had not calculated the Guidelines range, but said he "believe[d]" Anderson was facing a fifteen-year mandatory minimum as a "career offender." Tr. 10/28/2004, at 60. Again, the district court asked the lawyer to calculate the Guidelines range. *Id.* at 62–65.

On the day appointed for trial, Anderson's lawyer said Anderson intended to plead guilty, contrary to his earlier representation. The court asked trial counsel if he had done the Guidelines calculation, and he said he had. Tr. 11/8/2004, at 2. The Government's attorney then proffered the police officers' testimony, and the court began a plea colloquy with Anderson. *Id.* at 10–11, 12. At first, Anderson agreed with the Government's version of the story. *Id.* at 12. When the court questioned him more specifically, though, Anderson said he had not reached down for a gun when Boteler asked for his license. *Id.* at 13. Instead, Anderson said, the police only found the gun "up under the seat" after removing both Anderson and his passenger from the car and searching it. *Id.* at 13–14. Still,

the vehicle lurched forward." Tr. 11/9/2004, at 278. At sentencing and on appeal, Anderson claims that the car lurched forward when he took his foot off the clutch to "attempt[] to push the gun under the seat with his foot." Dist. Ct. Docket No. 26, *quoted in* Appellant's Br. 22 n.7.

Anderson admitted to having "place[d] the gun there originally," *id.* at 14, and confirmed that he was willing to go forward with the plea, *id.* at 15.

In the ensuing penalty discussion between counsel, the district court judge, and the probation officer, it became clear that Anderson's lawyer had miscalculated the sentencing range. *Id.* at 21–28. He had erroneously disregarded as "stale" certain prior offenses[2] that made Anderson an "armed career criminal" subject to a fifteen-year mandatory minimum with a Guidelines range of 235 to 293 months—188 to 235 months if he accepted responsibility. *See* 18 U.S.C. § 924(e)(1).[3] This was far longer than the statutory *maximum* of ten years and the Guidelines range of 77 to 96 months Anderson's lawyer had calculated—the calculation on which Anderson had relied. When Anderson realized the severity of the sentence he was facing, he decided not to plead guilty. Tr. 11/8/2004, at 30.

At trial, the court ruled the Government could not use Anderson's testimony in the aborted plea colloquy to impeach him, but noted the Government could use it as the basis for a perjury charge. Tr. 11/9/2004, at 233. The Defense put on no

---

[2] According to Anderson's lawyer, the three relevant priors were for carrying a dangerous weapon, assault with a dangerous weapon, and attempted distribution of cocaine. Tr. 11/8/2004, at 28.

[3] Normally certain prior convictions that are more than 10 years old are not counted for purposes of calculating criminal history. *See* U.S.S.G. § 4A1.2(e). But the armed career criminal enhancement applies to persons convicted under 18 U.S.C. § 922(g) with at least three prior convictions for violent felonies or serious drug offenses, regardless of the age of the offenses. *See* U.S.S.G. § 4B1.4 app. n.1 ("[T]he time periods for the counting of prior sentences under § 4A1.2 . . . [are not] applicable to the determination of whether a defendant is subject to an enhanced sentence under 18 U.S.C. § 924(e).").

witnesses, and Anderson declined to testify "irrespective of whether [he] would be impeached." Tr. 11/10/2004, at 399. Anderson now says he would have testified but for his lawyer's mistaken advice that testifying truthfully to his innocence would have exposed him to a fifteen-year penalty for perjury.

The jury found Anderson guilty of unlawful possession of a firearm and ammunition by a felon.

At sentencing, Anderson said the gun belonged to Saunders and Anderson had only taken responsibility for it to protect his daughter's fiancé from prison. Tr. 5/6/2005, at 8–9. He argued for the mandatory minimum fifteen-year sentence on that basis. *Id.* at 7–8. According to Anderson's sentencing memorandum, Saunders "threw the gun in the direction of Mr. Anderson," and "[t]he gun landed on the floor in front of Mr. Anderson where he left it for fear that the police would see him reach down between his legs and think he intended to shoot them." Memorandum in Aid of Sentencing at 1, *United States v. Anderson*, No. 04-cr-343, (D.D.C. Feb. 11, 2005). When he was ordered out of the car, Anderson "attempted to push the gun under the seat with his foot" "[a]t the same time [he] was getting out." *Id.*

The district court sentenced Anderson to 235 months in prison, the low end of the Guidelines range. Tr. 5/6/2005, at 14. Anderson argues that certain comments the sentencing judge made betray the court's misunderstanding of the scope of its discretion at sentencing. First, Anderson says the court impermissibly treated a sentence within the Guidelines range as presumptively correct and therefore refused to consider departing from that range without a special evidentiary justification. Second, Anderson argues the court mistakenly believed it could not consider his allocution at sentencing.

6

II

A

Anderson argues his trial counsel failed to provide constitutionally adequate assistance because he miscalculated Anderson's Sentencing Guidelines range, induced him to begin a plea colloquy that he terminated when he learned the true sentencing range, and then advised him not to testify in his own defense on the mistaken belief that any exculpatory testimony would conflict with the aborted plea colloquy and make him liable for perjury.

"In order to succeed on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must show two things: (1) 'that counsel's performance was deficient,' and (2) 'that the deficient performance prejudiced the defense.'" *United States v. Shabban*, 612 F.3d 693, 697 (D.C. Cir. 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "To establish deficiency, [he] must show his 'counsel's representation fell below an objective standard of reasonableness.' To establish prejudice, he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 130 S. Ct. 447, 452 (2009) (citations omitted) (quoting *Strickland*, 466 U.S. at 688, 694)). "This court's general practice is to remand the claim for an evidentiary hearing unless the trial record alone conclusively shows that the defendant either is or is not entitled to relief." *United States v. Shabban*, 612 F.3d 693, 698 (D.C. Cir. 2010) (quoting *United States v. Rashad*, 331 F.3d 908, 909–10 (D.C. Cir. 2003)).

Anderson does not deny that the trial record is inadequate for us to determine whether he was denied his Sixth

Amendment right to counsel. For example, Anderson offers no evidence that his lawyer advised him a perjury conviction would carry a fifteen-year penalty or that he would have testified at trial but for his fear of indictment for perjury.

The Government insists we may deny Anderson's ineffective assistance claim forthwith because the record needs no supplementation. Even under Anderson's version of the facts, the Government contends, his claim cannot satisfy the prejudice requirement of *Strickland*. According to the Government, Anderson's insistence that he was just "trying to kick the gun up under the seat" after Saunders threw it to him amounts to an admission of constructive possession. Tr. 5/6/2005, at 8–9. We disagree.

Our standard for constructive possession requires that there be "some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in them, some power over them." *United States v. Bryant*, 523 F.3d 349, 355 (D.C. Cir. 2008) (quotation marks and alteration omitted); *see United States v. Foster*, 557 F.3d 650, 657 (D.C. Cir. 2009) ("Constructive possession requires that the defendant knew of, and was in a position to exercise dominion and control over, the contraband."). It is not clear from the record whether Anderson had the necessary stake in the handgun to have constructively possessed it. Though "evasive conduct . . . coupled with proximity" to a gun "*may* suffice" to establish constructive possession, *see United States v. Booker*, 436 F.3d 238, 242 (D.C. Cir. 2006) (emphasis added), that is a question for the trier of fact.

Because the record before us is insufficient to decide whether Anderson received constitutionally adequate counsel, we remand for an evidentiary hearing on his Sixth Amendment claim.

B

Anderson challenges his sentence on the ground that the district court placed two inappropriate restraints on its discretion at sentencing: The sentencing judge was unwilling to depart from the Guidelines range without some factual showing to justify the departure, and she refused to consider Anderson's exculpatory statements at the sentencing hearing.

Because he did not object to the district court's statements at the sentencing hearing, we review Anderson's sentencing-related claims for plain error. *See In re Sealed Case*, 204 F.3d 1170, 1171 (D.C. Cir. 2000). To justify reversal, "[i]n addition to being obvious, the error generally must also have been 'prejudicial.'" *United States v. Saro*, 24 F.3d 283, 286 (D.C. Cir. 1994). That is, "the defendant must show a reasonable likelihood that the sentencing court's obvious errors affected his sentence." *Id.* at 288. "While our plain error review in the sentencing context requires a 'slightly less exacting' showing of prejudice than for trial errors, an appellant must still show that 'from the perspective of the trial court, the error was so plain that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.'" *In re Sealed Case*, 204 F.3d at 1172 (quoting *Saro*, 24 F.3d at 286, 287 (alterations and quotation marks omitted)).

1

Anderson first argues the district court erred by applying a presumption of reasonableness to its within-Guidelines sentence. Anderson says the judge's comments at the sentencing hearing suggest that any departure from the Guidelines range would have to be justified with a special factual finding. Recognizing that Anderson's sentence at the

low end of the Guidelines range "certainly is a hefty sentence," the judge said, "there is nothing in your life that the court can point to, or that you can, . . . that the court can look to, to *consider* not giving you what the sentencing guidelines *require*." Tr. 5/6/2005, at 13–14 (emphases added); *see also id.* at 13 ("[T]here really isn't something that would ordinarily come forward for [downward departure from the Guidelines], which would be the reason to consider it."). According to Anderson, these statements amount to a presumption that a sentence within the Guidelines range is reasonable.

The Supreme Court clarified two years after Anderson was sentenced that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. 338, 351 (2007). That presumption attaches only in the court of appeals. *See id.*

Assuming *arguendo* the district court applied an erroneous presumption of reasonableness to the Guidelines sentence, we would not find the error plain. "[W]here, as here, the law was unsettled at the time of trial but becomes settled by the time of appeal, we assess error as of the time of trial." *United States v. Mouling*, 557 F.3d 658, 664 (D.C. Cir. 2009). When Anderson was sentenced, no clear precedent established that district courts may not avail themselves of the presumption of reasonableness applied by appellate courts to within-Guidelines sentences. Thus, "any error in employing such [a presumption] cannot have been plain," *id.*, and we need not decide the question.

Of course, the district court will be bound by *Rita* at resentencing and may not apply a presumption of correctness to a within-Guidelines sentence.

2

Anderson next alleges the district court misapprehended the breadth of its discretion in refusing to consider his allocution at sentencing. We agree. The court said its sentencing

> decisions were made based on the testimony that was provided. And obviously the information I believe that you've provided [at the sentencing hearing] as to what occurred is not something that's on the record, if I'm not mistaken. And so, you know, both the court and the jury makes a decision based on what the record is.

Tr. 5/6/2005, at 16. It was clear at the time of Anderson's sentencing hearing, however, that a court could consider the defendant's post-trial statement in crafting his sentence. Any assumption to the contrary violates the rule that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see United States v. Tucker*, 404 U.S. 443, 446 (1972) ("[A sentencing] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.").[4]

---

[4] The legislative history of 18 U.S.C. § 3577, predecessor to current § 3661, cites with approval the Supreme Court's observation that "modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial."

The Government does not defend the district court's statement of the law, but concludes "[i]t is not entirely clear . . . what the district court meant." Appellee's Br. 50. The Government speculates that the judge "could have been explaining to appellant that in exercising her discretion to formulate a sentence, she was going to give greater weight to the sworn testimony and evidence presented at trial, and less weight to appellant's unsworn statements at sentencing." *Id.* at 51. This charitable reading of the district court's statement has no basis in the record. The court made no mention of "discretion" or the "weight" of evidence, apparently believing its ken to be limited, like a jury's, to the evidence presented at trial. *Cf. United States v. Holton*, 116 F.3d 1536, 1542 (D.C. Cir. 1997) ("[C]onsideration by the jury of documents not in evidence is error."). But a sentencing judge is subject to no such limitation. Although it need not assign any weight to a defendant's unsworn statements, the sentencing court may consider the allocution along with any other available "information concerning the [defendant's] background, character, and conduct." 18 U.S.C. § 3661; *see also United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005) ("Mitigating evidence [from the defendant at sentencing pursuant to § 3661] would have been relevant, of course, to the court's analysis under § 3553(a)."); *United States v. Doe*, 934 F.2d 353, 358 (D.C. Cir. 1991) (noting the defendant raised information relevant to sentencing at her sentencing hearing).

The "somewhat lighter" prejudice requirement that applies in the context of sentencing error is satisfied here. *Saro*, 24 F.3d at 288. Because the court thought it was not allowed to

*Williams v. New York*, 337 U.S. 241, 247 (1949), *cited in* S. Rep. No. 91-617, at 167 (1969) ("Appropriately evaluated hearsay is permissible. The exclusionary rules developed for trial on the issue of guilt are not to be applied." (citation omitted)); *see* H.R. Rep. No. 91-1549, at 63 (1970) (citing *Williams*, 337 U.S. 241).

consider statements not in evidence at sentencing, it neglected to consider Anderson's entire allocution. That allocution was relevant to Anderson's background, his character, and the conduct for which he was sentenced:

> What [the prosecutor] said about me, yeah, I did all the things, but I was young and very stupid at the time. And I feel as though I done paid for them crimes that I did. And for me to be up here looking at 25 years for a gun that I never really possessed is to be kind of—you know, it just don't make sense now. . . .

> I haven't been in my daughter's life because I been locked up most of my life and this is her boyfriend and they plan on getting married and he's 10 years probation. So when he does it, I'm looking at I got 5 years for a gun, and probably if I take a cop 36 months or 42 months or something like that, and I, like, I feel like I owe her that. You know what I mean? And she would look at it like, Oh, my father he ain't did nothing for me, but he did this here for me.

> But I never knew I was looking at this kind of penalties. If I did, then when the police approached the car, it would have been said, "Oh, this ain't my gun. This is his gun."

> I never thought that I'm going to be looking at the rest of my life with something, like I said, I never really possessed.

> And like I was telling you when I was taking my cop, the police lied. Never seen the gun in my hand. I was trying to kick the gun up under the seat, and that's what he seen, Your Honor. But other than that, that's all I have to say.

Tr. 5/6/2005, at 8–9. Anderson's sentence "might likely have been different" if the sentencing judge had considered Anderson's description of his minimal responsibility for the gun, the brief time that it was in his proximity, and his generous impulse toward his daughter and her fiancé. *United States v. Smith*, 267 F.3d 1154, 1160 (D.C. Cir. 2001) (concluding a sentencing error was prejudicial). No evidence in the record conveyed Anderson's unique perspective on the relevant events.

The district court, of course, is in the best position to evaluate Anderson's credibility. *See Gall v. United States*, 552 U.S. 38, 51–52 (2007). And if what Anderson said is true, it is for the district court to determine how that should affect his sentence. *See id.* Therefore, "we express no view as to the ultimate propriety" of the sentence and remand "only to ensure that the appropriate methodology is followed." *United States v. Taylor*, 937 F.2d 676, 684 (D.C. Cir. 1991).

We vacate Anderson's sentence, and we remand his case for an evidentiary hearing on his ineffective assistance claim. If the district court determines Anderson received constitutionally adequate counsel, it should resentence him.

*So ordered.*