# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued December 3, 2014          Decided April 3, 2015

No. 12-3007

UNITED STATES OF AMERICA,
APPELLEE

v.

KHALED MOHAMED SHABBAN, ALSO KNOWN AS KHALED
SHABBAN, ALSO KNOWN AS KHALED MUHAMAD RASHAD
SHABBAN, ALSO KNOWN AS MOHAMED RASHAD KHALED,
ALSO KNOWN AS KHALED MOHAMED RASHAD MOHAMED,
ALSO KNOWN AS KHALED MOHAMED RASHAD MOHAMED
MAHMOUD SHABBAN, ALSO KNOWN AS KHALED RASHAD,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cr-00290-1)

---

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant. With her on the brief was *A.J. Kramer*, Federal Public Defender.

*David P. Saybolt*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Carolyn K. Kolben*, Assistant U.S. Attorneys.

Before: GRIFFITH and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Khaled Shabban challenges his conviction for international parental kidnapping on the ground that his trial counsel gave him constitutionally defective assistance. We disagree and affirm his conviction.

I

Shabban is an Egyptian national who met Araceli Hernandez, a Mexican national, in Washington, D.C.[1] They had a son together in August 2001. Because the couple did not live together, they entered into a consensual order governing the custody of their son in the Superior Court of the District of Columbia. The parties agreed that Hernandez would have primary physical custody of the boy, Shabban would have unsupervised visitation rights, and that their son would "'not be removed from the country without the express[] written consent of both parties.'" *United States v. Shabban*, 612 F.3d 693, 694 (D.C. Cir. 2010) (quoting Trial Tr. 203 (June 19, 2007)) (alterations in original). Despite this agreement, three years after entering into the custody order, Shabban began preparing to take his son to Egypt without Hernandez's permission. He sold his coffee business and made

---

[1] The facts stated here are taken largely from our earlier description of this case in Shabban's first appeal. *See United States v. Shabban*, 612 F.3d 693 (D.C. Cir. 2010). In that case, Shabban argued that his conviction was not supported by sufficient evidence and that his trial counsel's performance was defective. We found sufficient evidence to sustain the conviction, but remanded for an evidentiary hearing on the ineffective assistance of counsel claim.

arrangements for his roommate to take over the lease on their apartment. He told his roommate of his plan to take the boy to Egypt and claimed that Hernandez did not care. Shabban called Hernandez on November 21, 2004, and asked if he could take their son to an amusement park. Hernandez agreed. Later that day, she tried to call Shabban, but he did not answer. She went to his apartment, but he was not there. That evening, Shabban and his son boarded a flight to Cairo, with Shabban flying under the name "Khaled Rashad." A week later, Shabban called Hernandez and told her that he and their son were in Egypt. Hernandez contacted the authorities and eventually worked with the FBI over the course of the next twenty-two months to convince Shabban to bring the child back to the United States.

During their conversations, which were taped, Shabban referred to their son's difficulty learning to communicate and told Hernandez that he had taken the child to Egypt to learn a single language, Arabic, rather than the three he was hearing at home, Arabic, Spanish, and English. Shabban admitted taking the child without the permission of Hernandez. Upon the FBI's advice, Hernandez asked and eventually convinced Shabban to return their son to the United States in time for the next school year. Federal agents arrested Shabban at the airport when he arrived in New York. After his arrest, Shabban told the FBI that he had taken his son to Egypt because the child was having difficulty speaking and understanding others. Shabban also admitted that Hernandez would not have given him permission to take the child abroad had he asked first.

Shabban was charged with international parental kidnapping in violation of 18 U.S.C. § 1204(a), which makes it a crime to "remove[] a child from the United States, or attempt[] to do so . . . with intent to obstruct the lawful

exercise of parental rights." At trial, Shabban argued that he lacked the specific intent to obstruct Hernandez's parental rights that the statute requires because his sole purpose in taking their son was to place him in an environment that would improve his speech. Shabban's trial counsel pursued this defense by introducing recordings of Shabban's phone calls with Hernandez and cross-examining Hernandez and FBI witnesses. The prosecution argued that while Shabban no doubt intended to help his son, he also intended to obstruct Hernandez's rights, which was all that was needed to support a conviction. The jury agreed with the prosecution and convicted Shabban. The trial judge sentenced him to thirty-six months' imprisonment.

Shabban appealed, arguing that there was insufficient evidence to support his conviction and that his trial counsel's performance was defective for numerous reasons, including that he failed to call a school teacher and a social worker, both of whom worked with the child at school and would have testified that he had problems with speech and comprehension. We rejected Shabban's challenge to the weight of the evidence but remanded his claim of ineffective assistance for an evidentiary hearing. *See Shabban*, 612 F.3d at 697-98; *see also United States v. Rashad*, 331 F.3d 908, 909-10 (D.C. Cir. 2003) ("Due to the fact-intensive nature of the [ineffective assistance of counsel] inquiry . . . this court's general practice is to remand the claim for an evidentiary hearing.") (internal quotation marks omitted).

At the hearing, the district court considered affidavits from Shabban and his trial counsel, Steven McCool, along with testimony from McCool. In Shabban's affidavit he alleged that "[t]he social worker and teachers at my son's school said that my son was slow [and] that he should be put into some kind of 'special education' class." J.A. 76. Shabban

averred that he had given McCool the name of his son's teacher and the school's contact information. He asked, "[i]f Mr. McCool was able to locate my son's teacher and interview her, why did he not ask her about the social worker's name because they worked in the same school? And, why did he not ask them to come to the Court to testify about my son's condition[?]" J.A. 77.

In his affidavit, McCool replied that he had hired an investigator who visited the child's school. The investigator did not interview the social worker because Shabban "did not provide the name of [his son's] social worker." J.A. 52. In any event, according to McCool, any testimony the social worker could have provided was already before the jury because "Ms. Hernandez testified [at trial] that a social worker told her that [her son] had difficulty with verbal communication." J.A. 52. According to McCool's affidavit, the investigator interviewed the principal, who "would not have provided evidence favorable to Mr. Shabban," and the child's teacher, who "would not have provided evidence unfavorable to Mr. Shabban." J.A. 51-52. But at the evidentiary hearing, McCool testified somewhat differently. The teacher's testimony, he asserted, would not have been *favorable* to Shabban and would have been consistent with the principal's testimony. The teacher would have testified that even though the child "did indeed have some language difficulties, . . . he was progressing at school, and . . . that there was no need to take him to Egypt for three years to work on his language difficulties." Evid. Hear. 12.

The district court denied Shabban's claim of ineffective assistance of counsel, holding that McCool had thoroughly investigated the teacher, found that her testimony would have been unfavorable (without mention of the contradictory affidavit), and made an informed decision not to call her as a

witness. This was a "strategic choice" to which the court was required to defer. *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). As for the social worker, the court determined that even if McCool should have done more to find her, Shabban suffered no prejudice because Hernandez had testified at trial about the social worker's concerns with the boy's language skills. Shabban now appeals. We have jurisdiction under 28 U.S.C. § 1291.

## II

An appellant claiming ineffective assistance of counsel must show: (1) that counsel's performance was deficient and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694. Although we review the district court's factual findings for clear error, the standard of review for a claim of ineffective assistance of counsel is unsettled in this circuit. Such a claim presents mixed questions of law and fact, which are sometimes reviewed de novo and sometimes only for abuse of discretion. *See United States v. Toms*, 396 F.3d 427, 432-33 (D.C. Cir. 2005). We have not yet decided which should apply because we have not yet confronted an ineffective assistance of counsel claim in which the standard made a difference. *See id.* And we see no reason to select between the standards now, because Shabban's claim "fails even under the more searching *de novo* standard." *Id.* at 433.

## A

First, we must ask whether trial counsel's performance was deficient. Our review is "highly deferential" with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*,

466 U.S. at 689. Counsel's strategic choices made after thorough investigation are "virtually unchallengeable." *Id.* at 690.

Shabban challenges McCool's decision not to call the teacher as a witness. Before we can determine whether this decision was deficient, we must ask whether the district court erred in finding that McCool concluded that the teacher's testimony would have been unfavorable to Shabban. According to Shabban, the teacher would have testified that his son had difficulty speaking and understanding English, which would have bolstered his defense that he had no other aim in taking his son to Egypt but to help him. *See* J.A. 76-77. Shabban points to the statement in McCool's affidavit that the teacher "would not have provided evidence unfavorable to Mr. Shabban." J.A. 51-52. But at the hearing, McCool contradicted his affidavit and clearly explained that the teacher's testimony would not have helped Shabban. Instead, she would have testified that, despite some difficulties, the child was "progressing at school" and that "there was no need to take him to Egypt for three years to work on his language difficulties." Evid. Hear. 12. The district court credited McCool's testimony at the hearing and found that he did not call the teacher to the stand because he determined that her testimony would not have been favorable to Shabban. This factual finding was not clearly erroneous. Though the district court made no mention of the contradictory affidavit, it was reasonable for the court to conclude that the more detailed hearing testimony was accurate. The language in the affidavit, it seems, likely contained an unfortunate typographical error that created an unintended double negative. The statement that the teacher's testimony "would not have been unfavorable" likely should have said that it "would not have been favorable," a description that is supported by McCool's

testimony. Thus, the district court did not clearly err and we uphold its findings.

We have no trouble concluding that McCool's decision not to call the teacher to testify was well within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. It was only after McCool interviewed the teacher and learned that what she had to say would have been unfavorable to Shabban that he decided not to call her as a witness. Such a judgment based on a thorough investigation is precisely the kind of "sound trial strategy" that *Strickland* directs us to protect from challenge. *See id*. (internal quotation marks omitted).

Nor was McCool deficient in failing to call the social worker to testify. Shabban argues that, like the teacher, the social worker "presumably could have testified with more expertise and authority" than Hernandez about the child's communication difficulties. Although this may be true, as McCool explained, not only did Shabban never identify the social worker to him, but McCool did not recall Shabban ever telling him that his son saw a social worker at school. We find it reasonable that McCool "would not have asked [an investigator] to identify a social worker that [he] was not aware of." Evid. Hear. 13. Shabban does not counter McCool's version of the events, but argues that McCool would have found the social worker with a more diligent investigation of the school. We disagree. McCool took adequate measures to locate witnesses at the child's school. After concluding that both the teacher and the principal would provide testimony unfavorable to Shabban, McCool determined that no further investigation was needed. Under the circumstances, this decision was reasonable. McCool was "entitled to . . . balance limited resources in accord with

effective trial tactics and strategies." *Harrington v. Richter*, 562 U.S. 86, 107 (2011).

B

Not only does Shabban fail to show that McCool's performance was defective, we also conclude that he has not shown any prejudice. Even had the social worker and teacher testified about the child's language difficulties, evidence of this kind was already introduced at trial through recorded phone calls between Hernandez and Shabban, Hernandez's own testimony, and testimony from an FBI agent who interviewed Shabban. As the district court stated at the evidentiary hearing, "there is no question the trial established that [Shabban's] son suffered from language and communication problems. There is no question that he took his son, in his eyes, to Egypt to improve his language communication problems. All of that was brought out at trial." Evid. Hear. 111. Thus, any testimony from the teacher or social worker would have been cumulative only. *See United States v. Mitchell*, 216 F.3d 1126, 1131 & n.2 (D.C. Cir. 2000); *see also Toms*, 396 F.3d at 434-35. More importantly, this testimony could not have undermined the significant evidence that Shabban was aware his actions would obstruct Hernandez's parental rights. The statute requires only an "intent to obstruct" parental rights, 18 U.S.C. § 1204(a), and as Shabban conceded, evidence of multiple motives does not exonerate a defendant where there is evidence of the requisite intent. *See Shabban*, 612 F.3d at 696. Shabban argues that the testimony from the teacher and the social worker would have established his intent to help his son with language development. Maybe so. Regardless, that testimony in no way diminishes the substantial evidence that indicates Shabban's intent to obstruct Hernandez's parental rights, including his lies to Hernandez about his plans for their

child and his admission to the FBI that she would not have given him permission to take their son. Shabban's actions directly violated the custody agreement he signed. The government therefore demonstrated the intent the statute requires. Shabban's attempt to prove that he had some additional motive accomplishes nothing so long as the evidence of his intent to impede Hernandez's rights remains unchallenged. Thus, Shabban's ineffective assistance of counsel claim fails on both *Strickland* prongs.

## III

For the foregoing reasons, the conviction is affirmed.