# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 2, 2015          Decided November 17, 2015

No. 15-3009

UNITED STATES OF AMERICA,
APPELLEE

v.

KERRY NEWMAN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:01-cr-00361-1)

*Rion O. Latimore* argued the cause and filed the brief for appellant.

*Stephen F. Rickard*, Assistant U.S. Attorney, argued the cause for appellee.  On the brief were *Vincent H. Cohen Jr.*, Acting U.S. Attorney, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Ann K.H. Simon*, Assistant U.S. Attorneys.

Before: TATEL and MILLETT, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Appellant Kerry Newman seeks to vacate his conviction for federal wire fraud on the ground that his attorney failed to properly advise him about the immigration consequences of pleading guilty. The district court denied his request partly because it believed he was unable to show prejudice. For the reasons set forth below, we reverse and remand.

## I.

A Jamaican citizen, Kerry Newman became a lawful permanent resident of the United States in 1980. Many years later, in 2001, he pled guilty to one count of federal wire fraud for his participation in a real estate "flipping" scheme. Prior to and at his plea hearing, his defense attorney failed to advise him that pleading guilty could affect his immigration status. Newman Aff. 2. Indeed, even after the district court warned Newman that a guilty plea to the felony offense "could have the consequence of deportation or exclusion from admission to the United States," Plea Hr'g Tr. 8–9, his lawyer said nothing, *see* Newman Aff. 2–3.

At sentencing eleven months later, Newman's attorney finally did comment on the potential immigration consequences of a conviction, although he got the law wrong. Both he and the prosecutor indicated that there might be "INS implications" if the judge imposed a sentence of more than a year and a day, but not if he imposed less. Sentencing Hr'g Tr. 8, 18. In fact, Newman's immigration status turned not on his sentence, but on the nature of the crime to which he pled. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I) (providing that an alien convicted of a crime involving moral turpitude is inadmissible); 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that an alien convicted of an aggravated felony is deportable). His attorney offered this inaccurate view of immigration law despite the obvious importance Newman placed on the

immigration consequences of his conviction. *See* Sentencing Hr'g Tr. at 18 (expressing Newman's desire to avoid immigration consequences). The district court, moreover, relied on the attorney's misrepresentations to impose a sentence that it believed would be "beneficial to [Newman] with respect to the INS." *Id.* at 22.

Although Newman subsequently completed his sentence and traveled abroad several times without incident, immigration authorities stopped him at the U.S. border in 2007 and charged him as inadmissible based on his conviction for a crime involving moral turpitude. Newman retained an immigration lawyer who informed him that wire fraud did indeed qualify as such a crime and that, based on the loss amount, his conviction also made him an "aggravated felon" for immigration purposes. *See* Newman Aff. 4. She thus advised him that he "did not have a chance of getting relief" and that he should consent to removal. *Id.* Newman followed that advice and an immigration judge ordered him removed to Jamaica, where he has resided ever since—separated from much of his family, including his parents and his daughter, and from the country he had called home for most of his life.

Then, in 2010, the Supreme Court offered Newman a ray of hope. In *Padilla v. Kentucky*, 559 U.S. 356 (2010), it held that defense attorneys provide inadequate representation when they fail to advise their clients about the likely deportation consequences of pleading guilty. Armed with that decision, Newman filed a petition for a writ of coram nobis, which provides a means of collaterally attacking a conviction when the person is no longer in custody. *See United States v. Morgan*, 346 U.S. 502 (1954) (recognizing the All Writs Act gives federal courts authority to issue writs of coram nobis to correct fundamental errors in criminal proceedings where the person is no longer in custody). Newman argued that a writ

was appropriate because *Padilla* made it clear that his defense attorney provided ineffective assistance by failing to inform him of, and by affirmatively misadvising him about, the potential immigration consequences of his conviction.

While Newman's petition was pending, however, the Supreme Court cast a dark cloud over the case. In *Chaidez v. United States*, 133 S. Ct. 1103 (2013), the Court held that *Padilla* announced a new rule of criminal procedure, at least insofar as it required attorneys to advise their clients about the risks of deportation. This meant that only defendants whose convictions, unlike Newman's, became final after *Padilla* could benefit from its holding. *See id.* at 1113.

No longer able to rely on his attorney's failure to counsel him about immigration risks, Newman maintained that his attorney's performance was nonetheless deficient in two other respects. First, he failed to "negotiate an effective plea bargain" by neglecting to research and consider immigration consequences when negotiating Newman's plea. Second, he provided erroneous immigration advice prior to and at sentencing. On this latter point, Newman argued that although *Padilla* announced a new rule requiring attorneys to advise their clients about deportation risks, it did not announce a new rule requiring attorneys to refrain from providing erroneous immigration advice. That, he contended, was a constitutional duty that predated *Padilla*.

The district court rejected both arguments. With respect to the first alleged deficiency, the court pointed out that "before *Padilla*, Newman's counsel was not required to affirmatively advise him before or at his plea of the possible immigration consequences of his plea." *United States v. Newman*, 74 F. Supp. 3d 484, 489 (D.D.C. 2014). With respect to the second alleged deficiency—defense counsel's

erroneous immigration advice—the court concluded that Newman was unable to establish prejudice. *Id.* "[B]ecause the misrepresentations by Newman's attorney occurred after [Newman] already had pled guilty," the court explained, he could not show "that the result of his proceeding would have been different absent these post-plea misrepresentations." *Id.* (internal quotation marks omitted). The district court therefore denied Newman's petition, although it did so "reluctantly." *Id.* at 486.

Newman now appeals, advancing the same two bases for his ineffective assistance claim.

## II.

"A petition for a writ of coram nobis provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241." *Chaidez*, 133 S. Ct. at 1106 n.1. Courts may grant coram nobis relief only in "extraordinary cases" where it is necessary "to achieve justice." *United States v. Denedo*, 556 U.S. 904, 911 (2009) (internal quotation marks omitted). In particular, and central to this case, coram nobis may be used to redress "fundamental error[s]" in criminal proceedings, such as violations of the Sixth Amendment right to counsel. *See id.* (citing *Morgan*, 346 U.S. at 513).

Although courts have articulated several factors that may bear on the propriety of granting such relief, *see, e.g.*, *United States v. Riedl*, 496 F.3d 1003, 1006 (9th Cir. 2007); *United States v. Faison*, 956 F. Supp. 2d 267, 269 (D.D.C. 2013), the parties' only dispute in this case is whether Newman has demonstrated a fundamental error warranting the writ. More specifically, their sole disagreement focuses on whether Newman can show that he was denied effective assistance of

counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). To do so, he must show that his lawyer's performance was "deficient" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694.

This circuit has yet to resolve the standard of review governing ineffective assistance claims. As we recently explained in *United States v. Shabban*, such claims "present[] mixed questions of law and fact, which are sometimes reviewed de novo and sometimes only for abuse of discretion." 782 F.3d 3, 7 (D.C. Cir. 2015). In *Shabban*, we saw "no reason" to resolve the question because the defendant's claim in that case "fail[ed] even under the more searching *de novo* standard." *Id.* We likewise have no need to resolve that question here because the standard of review has no effect on the outcome.

A.

Newman first contends that his lawyer's performance was deficient because he failed to "negotiate an effective plea bargain" and to "mitigate harm under the plea agreement." Appellant's Br. 15. By this, he faults counsel for failing to research and consider potential immigration consequences when negotiating his plea deal. *See id.* at 18–20.

This argument is foreclosed by *Padilla* and *Chaidez*. Simply put, it makes no sense to suggest that although defense attorneys had no duty to advise their clients about the immigration consequences of pleading guilty prior to *Padilla*, they nonetheless had a duty to research those consequences and take them into account when negotiating a plea deal. Accordingly, even under the more searching de novo standard, we conclude that the district court properly rejected Newman's first claim for ineffective assistance.

B.

We have a different view about Newman's second argument—that his attorney provided ineffective assistance by affirmatively misrepresenting the potential immigration consequences of a conviction. The government does not question the proposition that, at the time Newman was convicted, a lawyer's erroneous immigration advice could form the basis of an ineffective assistance claim. Oral Arg. Rec. 17:35–17:53. Instead, the government focuses on whether Newman can show prejudice. It believes he is unable to do so because his attorney provided inaccurate advice only after he pled guilty. In other words, as the government sees it, the damage was already done. The district court agreed, writing that Newman could not show prejudice because "the misrepresentations by [his] attorney occurred after he already had pled guilty." *Newman*, 74 F. Supp. 3d at 489.

But nothing about the temporal relationship between Newman's plea and his attorney's inaccurate advice categorically bars Newman from establishing prejudice. After all, under the Federal Rules of Criminal Procedure, Newman could have withdrawn his plea prior to sentencing for any "fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). In our view, then, the district court should not have denied the petition based solely on the timing of defense counsel's misrepresentations, and we must reverse. *See Koon v. United States*, 518 U.S. 81, 100 (1996) (reversing because of an error of law).

Of course, the burden of establishing prejudice falls squarely on Newman's shoulders. To prevail, he must show a reasonable probability that, "but for counsel's unprofessional errors," *Strickland*, 466 U.S. at 694, he would have sought to withdraw his plea and the court would have permitted him to

do so. He must also demonstrate a reasonable probability that after withdrawing his plea he would either have insisted on going to trial, *see Hill v. Lockhart*, 474 U.S. 52, 59 (1985), or obtained a plea deal with different immigration consequences, *see Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012). To do so, he must confront, among other things, the fact that he pled guilty after the district court expressly warned him that his plea could affect his immigration status. *See, e.g.*, *In re Sealed Case*, 488 F.3d 1011, 1016–17 (D.C. Cir. 2007) (noting that although trial court's warning at plea colloquy did not defeat defendant's prejudice claim, it weakened his claim that he relied on his attorney's sentencing prediction when entering plea).

Ultimately, we decline to express an opinion on whether Newman can carry his burden here and instead remand the case to the district court for further consideration. We believe this is the best course for several reasons. First, determining whether Newman was prejudiced requires resolution of difficult legal and factual questions, such as whether Newman can show he would have had a "fair and just" reason to withdraw his plea and whether he can demonstrate he would have been able to negotiate a more beneficial plea even though the prosecutor never offered one. But because the government focused exclusively on the timing of defense counsel's misrepresentations, the parties have not briefed these issues, and we thus consider it unwise to reach them. Second, given the fact-intensive nature of the prejudice inquiry, and given that the district court presided over Newman's earlier criminal proceedings, it is in a far better position to evaluate whether Newman suffered any prejudice. On this point, we think it not insignificant that the district court denied the petition "reluctantly," perhaps suggesting it believed the question was close. Finally, this approach comports with our general practice of remanding ineffective

assistance claims unless the record "conclusively shows" that an appellant is entitled to no relief. *See, e.g.*, *United States v. Rashad*, 331 F.3d 908, 909–910 (D.C. Cir. 2003) (explaining that, in direct appeals, "this court's general practice is to remand the claim for an evidentiary hearing unless the trial record alone conclusively shows that the defendant either is or is not entitled to relief"). Indeed, the Supreme Court followed this precise approach in a coram nobis case like this one. *See Morgan*, 346 U.S. at 512 ("Where it cannot be deduced from the record whether counsel was properly waived, we think . . . this motion in the nature of the extraordinary writ of coram nobis must be heard by the federal trial court.").

## III.

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*