# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 22, 2016        Decided June 10, 2016

No. 14-3060

UNITED STATES OF AMERICA,
APPELLEE

v.

QUEEN NWOYE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00012-1)

*A.J. Kramer*, Federal Public Defender, argued the cause and filed the briefs for appellant.

*Karen P. Seifert*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Elizabeth Trosman*, *Frederick Yette*, *James Sweeney*, and *David P. Saybolt*, Assistant U.S. Attorneys.

Before: KAVANAUGH, *Circuit Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Senior Circuit Judge* EDWARDS joins.

Dissenting opinion filed by *Senior Circuit Judge* SENTELLE.

KAVANAUGH, *Circuit Judge*: A woman named Queen Nwoye was convicted of conspiring with her boyfriend, Adriane Osuagwu, to extort money from a prominent doctor with whom Nwoye had previously had an affair. At trial, Nwoye testified that she acted under duress: She said that Osuagwu repeatedly beat her and forced her to participate in the extortion scheme. Despite asserting a duress defense based on Osuagwu's repeated abuse of Nwoye, Nwoye's counsel did not introduce expert testimony on battered woman syndrome. At the close of trial, Nwoye's counsel requested a jury instruction on duress, but the District Court denied the request. A jury then convicted Nwoye of conspiracy to commit extortion.

On direct appeal, Nwoye challenged the District Court's failure to instruct the jury on duress. This Court rejected the challenge, with Judge Tatel dissenting. But the Court indicated that it was rejecting Nwoye's challenge in part because Nwoye had failed to introduce expert testimony on battered woman syndrome. Such expert testimony, the Court suggested, may have entitled Nwoye to a duress instruction.

Nwoye then moved to vacate the conviction based on alleged ineffective assistance of trial counsel. A claim of ineffective assistance of counsel requires the defendant to show (i) that counsel's performance was constitutionally deficient and (ii) that the ineffective assistance prejudiced the defendant. On the first prong, the deficiency prong, Nwoye claimed that competent trial counsel would have introduced

expert testimony on battered woman syndrome. On the second prong, the prejudice prong, Nwoye claimed that such expert testimony would have led the District Court to instruct the jury on duress. And Nwoye further argued that the combination of the expert testimony and the duress instruction would have created a reasonable doubt respecting her guilt.

The District Court denied Nwoye's ineffective-assistance-of-counsel claim. The District Court held that Nwoye was not prejudiced by trial counsel's failure to introduce expert testimony on battered woman syndrome. The District Court therefore did not need to (and did not) decide whether counsel's performance was constitutionally deficient.

Although the prejudice question is close, we see it differently than the District Court did. We conclude that Nwoye was prejudiced by trial counsel's failure to introduce expert testimony on battered woman syndrome. We therefore reverse the judgment of the District Court, and we remand so that the District Court may decide whether Nwoye's counsel was constitutionally deficient in failing to present such testimony.

I

A

In January 2007, a woman named Queen Nwoye was indicted for conspiring with her then-boyfriend, Adriane Osuagwu, to extort money from Ikemba Iweala. Iweala was a prominent doctor. He and Nwoye had previously had an affair. Over the course of 49 days in 2006, Osuagwu and Nwoye repeatedly threatened Iweala that they would publicize his prior relationship with Nwoye unless Iweala paid them. Their threats were effective. Iweala made six

separate payments to Osuagwu and Nwoye, totaling almost $200,000.

At Nwoye's trial, Nwoye admitted to engaging in the alleged extortion but testified that Osuagwu had coerced her participation through his physically abusive and controlling behavior. According to Nwoye, her relationship with Osuagwu turned abusive shortly after they started dating in 2005. Osuagwu would frequently slap Nwoye with his hand, hit her with his shoe, and beat her on her face and body. Later, Osuagwu's physical violence escalated. Osuagwu beat Nwoye when she initially refused to introduce him to Iweala. Whenever she objected to the extortion, Osuagwu would beat her "like a drum." And on one occasion when Nwoye did not play her part in the extortion scheme, Osuagwu slapped Nwoye and threatened to "strangle" and "kill" her if the scheme were exposed.

Nwoye further testified that Osuagwu exerted financial and psychological control over her. Osuagwu forced Nwoye to hand over her ATM card and PIN. In addition, Nwoye and her children lived with Osuagwu at Osuagwu's home in Maryland. Nwoye testified that Osuagwu – the only person who knew that she lived at the house – would often threaten to kill Nwoye and bury her inside the house. Nwoye also testified that she was afraid to report Osuagwu to the police because Osuagwu had told her that he was a former FBI agent.

At the same time, Nwoye's testimony revealed that Osuagwu did not have direct physical control over Nwoye at all times. While Nwoye attended nursing school or worked at a hospital for three days a week, she was apart from Osuagwu. And Osuagwu spent at least a few days in California while Nwoye remained in Maryland.

But even while they were apart, Osuagwu constantly monitored Nwoye. He forced Nwoye to keep her phone with her and demanded that she answer promptly, even going so far as to require Nwoye to wear a Bluetooth earpiece during class at nursing school.

B

Despite the significant evidence of Nwoye's abusive relationship with Osuagwu, Nwoye's trial counsel did not seek to introduce expert testimony on battered woman syndrome.

Battered woman syndrome is a term that was coined by Dr. Lenore Walker in the late 1970s to describe the psychological and behavioral traits common to women who are exposed to severe, repeated domestic abuse. *See* LENORE E. WALKER, THE BATTERED WOMAN SYNDROME (1984); LENORE E. WALKER, THE BATTERED WOMAN (1979). Dr. Walker's theory was that women subject to cyclical domestic abuse develop psychological paralysis – or "learned helplessness" – that renders them unable to escape abusive relationships. *See* WALKER, BATTERED WOMAN SYNDROME at 86-97.[1]

---

[1] Although the majority of domestic violence victims are women, some cases involve victims who are men. *See* Department of Justice, Bureau of Justice Statistics, *Intimate Partner Violence, 1993-2010* 1 (Nov. 2012, rev. Sept. 2015) ("From 1994 to 2010, about 4 in 5 victims of intimate partner violence were female."). Some scholars have advocated abandoning the term "battered woman syndrome" in favor of the label "battering and its effects." *See, e.g.*, Mary Ann Dutton, *Update of the "Battered Woman Syndrome" Critique*, National Online Resource Center on Violence Against Women (Aug. 2009). We use the term "battered woman syndrome" in this opinion because the term is commonly used by

6

Since the advent of Dr. Walker's influential research, courts have admitted expert testimony on battered woman syndrome to support claims of duress and self-defense. *See* Janet Parrish, *Trend Analysis: Expert Testimony on Battering and Its Effects in Criminal Cases*, *in* DEPARTMENT OF JUSTICE ET AL., THE VALIDITY AND USE OF EVIDENCE CONCERNING BATTERING AND ITS EFFECTS IN CRIMINAL TRIALS pt. II, at 19, 21-22, 28 (1996) (hereinafter DOJ REPORT).

C

At Nwoye's trial, Nwoye's counsel did not present expert testimony on battered woman syndrome. Counsel instead staked Nwoye's duress defense entirely on Nwoye's own trial testimony. At the close of trial, Nwoye's counsel requested a jury instruction on duress. To be entitled to an instruction on duress, Nwoye had to present sufficient evidence (i) that she acted under an unlawful threat of imminent death or serious bodily injury and (ii) that there was no reasonable alternative to participating in the extortion scheme. *See United States v. Jenrette*, 744 F.2d 817, 820-21 (D.C. Cir. 1984).

The District Court ruled that Nwoye had not presented sufficient evidence on the second prong of duress – the no-reasonable-alternative prong – and therefore declined to give the duress instruction. The jury then convicted Nwoye of conspiracy to commit extortion, and the District Court sentenced Nwoye to 20 months in prison, followed by three years of supervised release.[2]

---

courts and because it describes the alleged circumstances in this case.

[2] For his part, Osuagwu pled guilty to conspiracy and was sentenced to 22 months in prison.

Nwoye appealed, challenging the District Court's decision not to give the duress instruction. This Court affirmed. *United States v. Nwoye*, 663 F.3d 460 (D.C. Cir. 2011). The Court explained that Nwoye had a number of reasonable alternatives to participating in the extortion scheme, including reporting Osuagwu to police or to friends and co-workers when she was at school or work, away from Osuagwu. *Id.* at 462-65.

The Court also stressed that although Nwoye had testified about the abuse she suffered, she failed to present "other usual indicia supporting a BWS defense – expert witnesses testifying to the effects of isolation, financial dependence, or estrangement from family members." *Id.* at 465. Therefore, the Court concluded that Nwoye was not entitled to a jury instruction on duress.

Judge Tatel dissented. In his view, Nwoye's testimony concerning Osuagwu's threats and abuse amounted to "more than enough evidence to have warranted a duress instruction." *Id.* at 468.

D

In 2013, after the termination of her supervised release, Nwoye filed a motion to vacate her conviction.[3] Nwoye

---

[3] On appeal, Nwoye has characterized her post-conviction motion as a petition for a writ of *coram nobis*. "A petition for a writ of *coram nobis* provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241." *Chaidez v. United States*, 133 S. Ct. 1103, 1106 n.1 (2013). The Government does not dispute that a petition for a writ of *coram nobis* is an appropriate way for Nwoye to seek redress for

claimed that her trial counsel was constitutionally ineffective because counsel failed to call an expert witness to testify about battered woman syndrome. To establish that her counsel was constitutionally ineffective, Nwoye had to prove (i) that her counsel's performance was constitutionally deficient and (ii) that counsel's ineffective assistance prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The District Court held an evidentiary hearing to allow Nwoye to present the expert testimony on battered woman syndrome that Nwoye argued should have been offered at trial. At the hearing, Nwoye's expert – Dr. Carole Giunta – testified extensively about battered woman syndrome in general. Dr. Giunta also opined that Nwoye's relationship with Osuagwu exhibited the "classic dynamics" of a battering relationship.

After considering this new evidence, the District Court denied Nwoye's motion to vacate her conviction. *United States v. Nwoye*, 60 F. Supp. 3d 225 (D.D.C. 2014). Applying the two-part test for ineffective-assistance claims, the District Court ultimately did not decide whether trial counsel's alleged failures rose to the level of a constitutional deficiency. Instead, the District Court decided that Nwoye was, in any event, not prejudiced by the lack of expert testimony on battered woman syndrome. The District Court reasoned that such testimony still would not have satisfied the second prong of duress – the no-reasonable-alternative prong – and that the testimony therefore would not have entitled Nwoye to a jury instruction on duress. *Id.* at 236-42. For that reason, the

her claim of ineffective assistance of counsel. *See United States v. Newman*, 805 F.3d 1143, 1146 (D.C. Cir. 2015).

District Court held that Nwoye had not made out a successful claim of ineffective assistance of counsel.

## II

Nwoye claims that her trial counsel was constitutionally ineffective because counsel failed to present expert testimony on battered woman syndrome. To reiterate, a defendant claiming ineffective assistance of counsel must show that (i) "counsel's representation fell below an objective standard of reasonableness" and (ii) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The District Court held that trial counsel's failure to present expert testimony on battered woman syndrome was not prejudicial. The District Court thus did not need to (and did not) decide whether trial counsel's failure to present such testimony was constitutionally deficient.

On appeal, therefore, the only issue for us to decide is whether the failure of Nwoye's trial counsel to present expert testimony on battered woman syndrome was prejudicial. If so, then we must remand for the District Court to determine whether trial counsel was constitutionally deficient in failing to introduce such testimony. If not, then we must affirm. We review de novo the District Court's denial of Nwoye's claim of ineffective assistance of counsel, including the question whether Nwoye was prejudiced by her counsel's allegedly deficient performance. *See United States v. Abney*, 812 F.3d 1079, 1086-87 (D.C. Cir. 2016).[4] Although the dissent

---

[4] Of course, we still review for clear error any findings of historical fact embedded in the District Court's conclusions on deficient performance and prejudice. *See Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014); *see also* HARRY T. EDWARDS, LINDA A. ELLIOTT, & MARIN K. LEVY, FEDERAL STANDARDS OF REVIEW:

suggests that we should give some deference to the District Court, our case law is clear that the standard of review is de novo.

To establish prejudice, Nwoye must demonstrate "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. To demonstrate a reasonable probability, Nwoye "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. She must demonstrate only "a probability sufficient to undermine confidence" in the verdict. *Id.* at 694.

Nwoye's prejudice argument proceeds in two steps: First, Nwoye argues that expert testimony on battered woman syndrome would have entitled her to a jury instruction on the defense of duress. Second, she claims that a duress instruction, together with the expert testimony on battered woman syndrome, would have created a "reasonable probability" that the jury "would have had a reasonable doubt respecting guilt." *Id.* at 695. Nwoye must succeed on both arguments to establish prejudice.

We conclude first that expert testimony on battered woman syndrome would have entitled Nwoye to a jury instruction on duress. And we conclude further that a duress instruction, together with the expert testimony, would have created a reasonable probability that the jury would have had a reasonable doubt respecting Nwoye's guilt.

---

REVIEW OF DISTRICT COURT DECISIONS AND AGENCY ACTIONS 1 (2d ed. Supp. 2015) (When "courts determine that a particular mixed question of law and fact should be treated as a question of law and reviewed *de novo*, subsidiary findings of fact are properly reviewed under the clearly erroneous standard of review.").

11

A

As this Court stated on Nwoye's direct appeal, a defendant is entitled to a jury instruction on any recognized affirmative defense "if there is sufficient evidence from which a reasonable jury could find for the defendant on that theory." *United States v. Nwoye*, 663 F.3d 460, 462 (D.C. Cir. 2011) (internal quotation marks omitted). To obtain an instruction on the affirmative defense of duress, a defendant must produce sufficient evidence (i) that "she acted under an unlawful threat of imminent death or serious bodily injury," and (ii) that there was no "reasonable, legal alternative to committing the crime." *Id.* (internal quotation marks omitted).

On direct appeal, this Court held that the evidence Nwoye presented at trial was insufficient to support a duress instruction. *Id.* at 462-65. In so ruling, however, the Court emphasized that Nwoye had not introduced expert testimony on battered woman syndrome. *Id.* at 465. The Court indicated (or at least implied) that Nwoye might have been entitled to a duress instruction had she introduced such testimony. We now must decide that question.

The question, put simply, is whether expert testimony on battered woman syndrome would have moved the evidentiary needle enough to entitle Nwoye to a duress instruction. To answer that question, we must initially assess whether, in general, expert testimony on battered woman syndrome can be admissible to prove duress – that is, whether it can be reliable and can be relevant to the duress defense. If so, then we next must assess whether the particular expert testimony proffered by Nwoye in her post-conviction proceeding was reliable and would have provided relevant evidence at Nwoye's trial. Finally, if Nwoye's expert testimony would

have been admissible, we must determine whether the introduction of such testimony at Nwoye's trial would have entitled her to a jury instruction on duress.

We now address those three questions in turn.

1

For expert testimony to be admissible in federal court, it must be both reliable and relevant. *See* FED. R. EVID. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

As to reliability, trial judges possess "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). At bottom, though, the expert's opinion must have "a reliable basis in the knowledge and experience of his discipline." *Id.* at 148.

The Government does not dispute that expert testimony on battered woman syndrome can be reliable. And several courts of appeals have permitted the admission of expert testimony on battered woman syndrome. *See United States v. Young*, 316 F.3d 649, 656-59 (7th Cir. 2002); *Arcoren v. United States*, 929 F.2d 1235, 1241 (8th Cir. 1991). None has held that such testimony is categorically unreliable, so far as we are aware. Given the history of expert testimony on this subject and the extensive literature, we too agree that expert testimony on battered woman syndrome can be reliable, assuming of course that the expert can demonstrate sufficient expertise to meet the usual requirements for experts to testify on a subject.

To be admissible in support of a duress defense, expert testimony on battered woman syndrome must also be *relevant* to proving duress. Most courts that have considered the question – especially in recent years – have recognized that expert testimony on battered woman syndrome can be relevant to prove duress. *See Dando v. Yukins*, 461 F.3d 791, 801 (6th Cir. 2006); *United States v. Dixon*, 413 F.3d 520, 524 & n.3 (5th Cir. 2005); *United States v. Ceballos*, 593 F. Supp. 2d 1054, 1060-62 (S.D. Iowa 2009); *United States v. Marenghi*, 893 F. Supp. 85, 91-97 (D. Me. 1995); *Wonnum v. State*, 942 A.2d 569, 572-73 (Del. 2007); *Commonwealth v. Pike*, 726 N.E.2d 940, 948 (Mass. 2000) (expert testimony assumed to be relevant to prove duress); *People v. Romero*, 13 Cal. Rptr. 2d 332 (1992), *rev'd on other grounds*, 883 P.2d 388 (Cal. 1994); *but see United States v. Willis*, 38 F.3d 170, 174-77 (5th Cir. 1994); *State v. B.H.*, 870 A.2d 273, 289-91 (N.J. 2005) (expert testimony irrelevant to reasonableness of duress defense).

We agree with the majority of the courts that expert testimony on battered woman syndrome can be relevant to the duress defense. The reason, put simply, is that the duress defense requires a defendant to have acted reasonably under the circumstances, and expert testimony can help a jury assess whether a battered woman's actions were reasonable.

Reasonableness is the touchstone of a duress defense. To satisfy the first prong of the duress defense, the defendant must have acted under the influence of a *reasonable* fear of imminent death or serious bodily harm at the time of the alleged crime. *See* 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 9.7(b) (2d ed. 2003) ("the danger need not be real; it is enough if the defendant reasonably believes it to be real"); *see also United States v. Jenrette*, 744 F.2d 817, 820-21 (D.C. Cir. 1984). And to satisfy the second prong of

the defense, there must have been no "*reasonable*, legal alternative to committing the crime." *Nwoye*, 663 F.3d at 462 (emphasis added). Whether an alternative is reasonable turns on whether a reasonable person would have availed herself of it.

Reasonableness – under both the imminence prong and the no-reasonable-alternative prong – is not assessed in the abstract. Rather, any assessment of the reasonableness of a defendant's actions must take into account the defendant's "particular circumstances," at least to a certain extent. *See id.* at 464; *see also* Model Penal Code § 2.09 (duress defense appropriate whenever a "person of reasonable firmness *in his situation* would have been unable to resist" threat of unlawful force) (emphasis added).

The circumstances that juries have historically considered in assessing reasonableness have been factors "that differentiate the actor from another, like his size, strength, age, or health," as well as facts known to the defendant at the time in question, such as the defendant's knowledge of an assailant's violent reputation. Model Penal Code § 2.09 cmt. at 375 (1985); *Smith v. United States*, 161 U.S. 85, 88 (1896). On the other hand, courts have typically precluded juries from considering factors such as the defendant's particular "psychological incapacity" or her "clarity of judgment, suggestibility or moral insight." Model Penal Code § 2.09 cmt. at 373-74 (1985).

Thus, whether expert testimony on battered woman syndrome is relevant to the duress defense turns on whether such testimony can identify any aspects of the defendant's "particular circumstances" that can help the jury assess the reasonableness of her actions. Examination of the particulars of the duress defense shows that expert testimony on battered

woman syndrome can indeed identify relevant aspects of a battered woman's particular circumstances.

With respect to the first prong of the duress defense – the imminent-harm prong – women in battering relationships are often "hypervigilant to cues of impending danger and accurately perceive the seriousness of the situation before another person who had not been repeatedly abused might recognize the danger." Lenore E.A. Walker, *Battered Women Syndrome and Self-Defense*, 6 NOTRE DAME J.L. ETHICS & PUB. POL'Y 321, 324 (1992). Remarks or gestures that may seem harmless to the average observer might be reasonably understood to presage imminent and severe violence when viewed against the backdrop of the batterer's particular pattern of violence. As our colleague Judge Brown stated while on the California Supreme Court: "Although a jury might not find the *appearances* sufficient to provoke a reasonable person's fear, they might conclude otherwise as to a reasonable person's perception of the *reality* when enlightened by expert testimony on the concept of hypervigilance." *People v. Humphrey*, 921 P.2d 1, 17 (Cal. 1996) (Brown, J., concurring).

Regarding the second prong of the duress defense – the no-reasonable-alternative prong – battered women face significant impediments to leaving abusive relationships. Most importantly, battered women who leave their abusers risk a retaliatory escalation in violence against themselves or those close to them – sometimes termed "separation abuse." Mary Ann Dutton, *Validity of "Battered Woman Syndrome" in Criminal Cases Involving Battered Women*, *in* DOJ REPORT pt. I, at 14-15; Desmond Ellis, *Post-Separation Woman Abuse: The Contribution of Lawyers as "Barracudas," "Advocates," and "Counsellors,"* 10 INT'L J.L. & PSYCHIATRY 403, 408 (1987). For example, studies have

suggested that women in battering relationships are more likely to be killed by their batterers after separating from them. *See* Dutton, *Validity of "Battered Woman Syndrome" in Criminal Cases Involving Battered Women* (citing Margo Wilson et al., *Uxoricide in Canada: Demographic Risk Patterns*, 35 CANADIAN J. CRIMINOLOGY 263, 263-91 (1993)), *in* DOJ REPORT pt. I, at 14. In addition, batterers often isolate their victims and exert financial control over them, rendering separation a significant burden. *See* LENORE E. WALKER, THE BATTERED WOMAN, 129-32 (1979). Expert testimony on those impediments to separation can help explain why a battered woman did not take advantage of an otherwise reasonable-sounding opportunity to avoid committing the alleged crime.

In short, expert testimony on battered woman syndrome can be relevant to both prongs of the duress defense.

Our conclusion is further supported by the decisions of the vast majority of courts that have long held that expert testimony on battered woman syndrome can be relevant in the analogous context of self-defense. *See, e.g.*, *Humphrey*, 921 P.2d at 8-9; *State v. Kelly*, 478 A.2d 364, 377-78 (N.J. 1984); *Ibn-Tamas v. United States*, 407 A.2d 626, 631-35 (D.C. 1979); *see also* Janet Parrish, *Trend Analysis: Expert Testimony on Battering and Its Effects in Criminal Cases*, *in* DOJ REPORT pt. II, at 19, 28. The elements of self-defense are similar to the elements of duress: To establish a claim of self-defense in most jurisdictions, a defendant must prove that she reasonably believed her use of force was necessary to prevent imminent death or serious bodily harm. *See* 2 LAFAVE, SUBSTANTIVE CRIMINAL LAW § 10.4. Thus, if battered woman syndrome can be relevant to prove self-

defense (as virtually all courts accept), it likewise should be relevant to prove duress.[5]

In sum, we conclude that expert testimony on battered woman syndrome may be admissible as a general matter to prove duress because such testimony can be reliable and can be relevant to both prongs of the duress defense.

2

The next question is whether expert testimony on battered woman syndrome would have been reliable and relevant *in Nwoye's case*. We conclude that it would have been.

To begin with, the Government does not argue that the expert testimony from Dr. Giunta that Nwoye proffered in her post-conviction proceeding was unreliable. And we have no reason to question its reliability.

Nwoye's expert testimony, moreover, would certainly have been relevant to Nwoye's defense. This Court suggested as much on Nwoye's direct appeal by noting the conspicuous absence of expert testimony on battered woman syndrome at Nwoye's trial. *Nwoye*, 663 F.3d at 465. And the Government does not dispute that Nwoye's trial testimony strongly

---

[5] The Government points out that the defenses of self-defense and duress are distinct in one sense: Defendants who act in self-defense often injure morally culpable individuals – the initial aggressors – while defendants who act under duress often injure blameless third parties. Thus, the Government argues, the duress defense should be more narrowly circumscribed in order to protect innocent third parties. Maybe so. But the proper response to such a fundamental mismatch between the defenses would be to make wholesale changes to the duress defense rather than to tweak on an ad hoc basis the kinds of evidence that are relevant to duress.

suggested that she had been a victim of a battering relationship. An expert on battered woman syndrome could therefore have helped the jury assess the reasonableness of Nwoye's actions, as we described above.

3

The next question is whether expert testimony on battered woman syndrome would have entitled Nwoye to a duress instruction in this case. On Nwoye's direct appeal, when we rejected Nwoye's claim that she was entitled to a duress instruction, we pointed specifically to the absence of "expert witnesses testifying to the effects of isolation, financial dependence, or estrangement from family members." *Id*. We now conclude that the introduction of such testimony at Nwoye's trial would have entitled Nwoye to a duress instruction.

Perhaps most critically, expert testimony on the likelihood of retaliatory violence upon separation could have provided a plausible explanation for why Nwoye failed to extricate herself from the extortion scheme. Nwoye may have feared that any attempt to leave Osuagwu would have resulted in still greater violence. Moreover, Nwoye may have reasonably believed that reporting Osuagwu to the police (or others) would have been unlikely to result in his immediate arrest and would have therefore placed her at greater risk in the interim. Thus, Nwoye's testimony concerning Osuagwu's abuse, supplemented by expert testimony on battered woman syndrome, would have constituted "sufficient evidence from which a reasonable jury could find" for Nwoye on a theory of duress. *Id.* at 462.

It may be helpful here to take a step back so that the reader does not miss the forest for the trees. The concept of battered woman syndrome fits this case to a T. A woman was

beaten repeatedly by her boyfriend. Some outsiders may question why she didn't just leave her boyfriend. But the expert testimony would help explain why. For the Government to come in now and say that such expert testimony, combined with Nwoye's own testimony about the beatings, still would not entitle her to a duress instruction is to say in essence that battered woman syndrome does not matter, at least in duress cases. We do not agree with that suggestion.

B

To this point, we have concluded that expert testimony on battered woman syndrome would have entitled Nwoye to a jury instruction on duress. To make out her claim of prejudice for purposes of the ineffective-assistance-of-counsel inquiry, Nwoye also must show that expert testimony on battered woman syndrome, together with the duress instruction, would have created a "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To repeat what we noted above, Nwoye does not need to show that the expert testimony and the jury instruction "more likely than not" would have produced an acquittal. *Id.* at 693. She must demonstrate only "a probability sufficient to undermine confidence" in the verdict. *Id.* at 694.

It can be difficult for a reviewing court (whether a district court or a court of appeals) to determine how additional evidence or an additional jury instruction would have affected a trial. It is inherently a speculative exercise. In this case, however, we conclude that Nwoye has demonstrated a reasonable probability that the jury would have had a reasonable doubt respecting her guilt.

At trial, Nwoye admitted to participating in the extortion scheme, but said she did so at the direction of Osuagwu.

Based on that testimony, Nwoye's only possible defense was that she acted under duress. But due in part to trial counsel's failure to present expert testimony on battered woman syndrome, Nwoye was denied a jury instruction on duress. And the District Court specifically precluded Nwoye's counsel from mentioning duress during closing arguments. Thus, the failure of Nwoye's counsel to present expert testimony on battered woman syndrome deprived Nwoye of any viable legal avenue to acquittal.

With an instruction on duress, together with expert testimony on battered woman syndrome, there is at least a reasonable probability that the jury "would have had a reasonable doubt respecting guilt." *Id.* at 695. Under very similar circumstances, the Sixth Circuit held that an attorney's failure to introduce expert testimony on battered woman syndrome prejudiced a defendant who pled guilty to robbery and related charges. *See Dando v. Yukins*, 461 F.3d 791 (6th Cir. 2006). The Court reasoned that, if counsel had introduced such testimony, the defendant would have had a sufficient evidentiary basis for a duress defense. And if the defendant had proceeded to trial on a theory of duress, there would have been a "likelihood of a favorable outcome at trial" such that the defendant's counsel would not have recommended that the defendant take a guilty plea. *Id.* at 800-02.

A similar analysis applies here. The duress instruction would have given jurors a legal basis upon which to vote not guilty. And as discussed above, the expert testimony on battered woman syndrome would have supported both elements of Nwoye's duress defense: the imminence of the threat and the absence of reasonable alternatives. In addition, expert testimony on battered woman syndrome would have bolstered the credibility of Nwoye's testimony about

Osuagwu's abuse. Jurors faced with testimony from a battered woman concerning her abuse and its effects may doubt the testimony because they do not believe that a woman subject to such abuse would stay with her abuser without alerting police or others. Expert testimony on battered woman syndrome could have helped Nwoye "dispel the ordinary lay person's perception that a woman in a battering relationship is free to leave at any time." *Humphrey*, 921 P.2d at 9; *see also Kelly*, 478 A.2d at 377.

Those factors add up to a reasonable probability that the jury would have had a reasonable doubt respecting guilt if expert testimony on battered woman syndrome had been presented at Nwoye's trial. The jury of course could still have convicted Nwoye; for example, the jury could have disbelieved that Nwoye was telling the truth about the abuse in the first place or could have been unpersuaded by the expert testimony. But for present purposes on appeal, we have no basis to question that Nwoye has told the truth about being abused by Osuagwu or to question the expert testimony. (The Government does not argue otherwise.) On this record, we conclude that Nwoye's testimony plus the expert testimony plus the duress instruction create at least a reasonable probability that the jury would have had a reasonable doubt respecting guilt. Nwoye was prejudiced by her counsel's failure to present expert testimony on battered woman syndrome.

\* \* \*

The District Court considered only the prejudice element of the inquiry into ineffective assistance of counsel. The District Court found no prejudice. Because we have concluded that Nwoye was prejudiced by the failure of her trial counsel to introduce expert testimony on battered woman

syndrome, we remand for the District Court to consider in the first instance the other prong of the ineffective-assistance-of-counsel standard: whether the performance of Nwoye's counsel fell below an objective standard of reasonableness. If counsel's performance was constitutionally deficient, then Nwoye will have established ineffective assistance of counsel and will be entitled to have her conviction vacated. We reverse the judgment of the District Court and remand for further proceedings.

*So ordered.*

SENTELLE, *Senior Circuit Judge*, dissenting: This case returns to us on a petition for writ of *coram nobis*, testing a criminal conviction previously affirmed by us on direct appeal in *United States v. Nwoye*, 663 F.3d 460 (D.C. Cir. 2011). In the original version, we considered an argument that the trial court had erred in refusing a defense request for an instruction on a duress defense. We affirmed the district court, holding that "a defendant is only entitled to an instruction on a theory of duress if there is 'sufficient evidence from which a reasonable jury could find' for the defendant on that theory." *Id.* at 462 (quoting *United States v. Akhigbe*, 642 F.3d 1078, 1083 (D.C. Cir. 2011)). Appellant Nwoye returns, alleging that her trial counsel rendered ineffective assistance in not presenting expert testimony on the battered woman syndrome and that she was prejudiced thereby. The district court was unconvinced, for reasons expressed in a most able opinion, *United States v. Nwoye*, 60 F. Supp. 3d 225 (D.D.C. 2014). My colleagues on this court reason differently than the district judge. I consider the district judge's reasoning the more compelling, and I will quote from it extensively herein.

As the majority sets forth, to prevail on the claim for ineffective assistance of counsel, a petitioning defendant must establish two elements: "(i) 'counsel's representation fell below an objective standard of reasonableness' and (ii) 'the deficient performance prejudiced the defense.'" Maj. Op. at 9 (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). The district court pretermitted the first question and proceeded to determine that counsel's decision not to introduce expert evidence on the subject of battered woman syndrome was not prejudicial. Because the majority deems the district court to have erred in the second part of its decision, we finish in the odd posture of sending the matter back for the resolution of the preliminary question. Be that as it may, in my view, the district

court did not err on the second prong, so like the majority, I will find it unnecessary to draw a resolution on the first.

I would note in passing that in judging the degree, if not the kind, of counsel's ineffectiveness, we have never before this case ruled on the admissibility of expert testimony on battered woman syndrome to a claimed defense of duress. As the district court noted, "Traditionally, expert testimony on BWS has been limited to cases where a defendant puts forward the affirmative defense of self-defense." 60 F. Supp. 3d at 237. While I do not dispute the majority's extension of the relevance to a duress defense in appropriate cases, I do find it less than shocking that the trial counsel did not more vigorously pursue the possibility in a pioneering posture than would have been the case had the defense been self defense. Be that as it may, as the majority notes, the issue directly confronting us is whether counsel's failure, construed as ineffective assistance, "prejudiced the defense." As the majority states, "Nwoye . . . must show that expert testimony on battered woman syndrome, together with the duress instruction, would have created a 'reasonable probability that . . . the result of the proceeding would have been different.'" Maj. Op. at 19 (quoting *Strickland*, 466 U.S. at 694). Like the district court, I am not convinced that she has made this showing.

To be entitled to an instruction on the defense of duress, a defendant must introduce at least some evidence on the two elements of the defense: (1) that the defendant acted under the threat of immediate death or serious bodily injury, and (2) that the defendant had no reasonable legal alternative to committing the crime. *See United States v. Gaviria*, 116 F.3d 1498, 1531 (D.C. Cir. 1997). Importantly, in the context of the present case, defendant must not only show some evidence on these two elements, she must also establish that if counsel had proffered the evidence (which he did except for the expert testimony), the

judge had allowed it in, and the judge had based instruction thereon, the jury result would have been different. The record simply does not support the majority's conclusion on this cluster of issues.

As the district court put it, the trial judge

provided the defendant with ample opportunity to present evidence in support of both of these necessary elements. She permitted the defendant to testify at length about the abuse that she said she had suffered at the hands of Mr. Osuagwu. In addition to Ms. Nwoye's testimony about her abuse, the judge also heard evidence that undercut defendant's theory of the case, including evidence that (1) Mr. Osuagwu frequently left the D.C.-Maryland area without her, taking trips to California that lasted days or weeks; (2) Ms. Nwoye left Mr. Osuagwu and returned to her husband in the summer of 2006 without incident; and (3) Ms. Nwoye eventually contacted the Nigerian security services regarding Mr. Osuagwu's criminal behavior.

60 F. Supp. 3d at 240.

Based on this evidence, the district court did not submit the duress instruction as requested. The jury returned a verdict of guilty. Then, as the district court noted, this court reviewed and affirmed the district court's decision.

In so doing, we

noted that Ms. Nwoye regularly left her home to attend nursing school classes and to work at the hospital and was thus "physically separated" from Osuagwu. [*United States v. Nwoye*, 663 F.3d at 463.] She also met alone with Dr. Iweala and did not tell him that she was being forced to

extort money from him. *Id.* Most importantly, the court of appeals emphasized that "Osuagwu spent nearly two weeks in California, thousands of miles away from Nwoye," giving her more than enough opportunity to notify law enforcement. *Id.* at 463-64. "[A] defendant with such 'countless opportunities to contact law enforcement authorities or [to] escape the perceived threats' cannot as a matter of law avail herself of the duress defense." *Id.* at 464 (quoting *United States v. Scott*, 901 F.2d 871, 874 (10th Cir. 1990)).

*Id.* at 231. Further, with direct reference to Nwoye's claim that she may have suffered from BWS, we explained that

Nwoye suggests the mere whiff of [BWS] arising from these facts should alter the duress determination. . . . [But] her theory is devoid of the other usual indicia supporting a BWS defense—expert witnesses testifying to the effects of isolation, financial dependence, or estrangement from family members. Indeed, as discussed earlier, Nwoye had many alternative sources of protections and support[,] . . . [including] access to relatives, classmates, and teachers with whom she could seek refuge. [Furthermore,] [s]he was not under constant visual surveillance. The conspiracy in which she participated lasted for months, . . . [and there were] weeks in which Osuagwu was thousands of miles away.

*United States v. Nwoye*, 663 F.3d at 465.

So seeing, we affirmed. Years later came the present petition for writ of *coram nobis*.

The petition originally came back to the trial judge. Due to her having suffered serious injury, the matter was reassigned to

a different judge whose decision we now review. The district court heard the testimony of four witnesses, including a forensic psychologist, the defendant herself, trial counsel, and the public defender now representing Ms. Nwoye.

With the trial record and the testimony of the four witnesses before him, the district judge applied the two-step analysis from *Strickland*, 466 U.S. at 687-88, and correctly noted that "[t]he *Strickland* prejudice prong requires only a reasonable probability—that is, 'a probability sufficient to undermine confidence in the outcome.'" 60 F. Supp. 3d at 234 (quoting *Strickland*, 466 U.S. at 694).

The district judge then explained that "'the [duress] standard is . . . partially objective; the defense is not established simply by the fact that the defendant was coerced; he must have been coerced in circumstances under which a person of reasonable firmness *in his situation* would likewise have been unable to resist.'" *Id.* at 238 n.6 (quoting Model Penal Code § 2.09, Explanatory Note (2001)) (emphasis added by the district court).

Applying these standards, the district court reasoned:

> In the context of duress, this means that a judge must instruct a jury on the defense of duress only when the defendant presents at least some evidence on both of the necessary elements of the defense. "To prevail on a duress defense, a defendant must convince the jury that (1) she acted under the threat of immediate death or serious bodily injury, and (2) that she had no reasonable legal alternative to committing the crime, *i.e.*, no chance both to refuse to do the criminal act and also to avoid the threatened harm."

*Id.* at 239 (quoting *United States v. Nwoye*, 663 F.3d at 467

6

(Tatel, J., dissenting) (other internal quotation marks omitted)).

With that and further reasoning, the court concluded, in my view reasonably, that "[b]ecause no amount of expert testimony could rectify [the] evidentiary deficiency, . . . there was no prejudice to the defendant by virtue of her lawyer's failure to offer expert testimony on BWS for presentation to" the trial court. *Id.* at 241. "Rather, in order for the defendant to be entitled to a duress instruction, she must adduce evidence at trial showing that she herself in fact had no reasonable legal alternative." *Id.* (citations omitted).

As did the district court, I recognize, as the majority points out, that this court in the direct appeal noted the lack of expert testimony on battered woman syndrome. Maj. Op. at 7, 11. However, I am not sure that I share my colleagues' conviction that the prior opinion "stressed" that omission, but rather listed it among a series of facts. *Id.* at 7. I finally suggest that we should remember what we are reviewing. The determination of probabilities of the effect of counterfactual circumstances partakes more of a decision of fact than of law. It is hornbook learning that we review factual decisions of district courts with deference. *See generally Anderson v. City of Bessemer City, NC*, 470 U.S. 564 (1985). Indeed, Rule 52(a)(6) of the Federal Rules of Civil Procedure provides that "[f]indings of fact . . . must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." While we may not be literally reviewing "a finding," we are essentially reviewing a factual determination. In this case two district judges have had the benefit of the credibility of witnesses and the experience of making factual determinations. I would afford them that same deference.

I therefore respectfully dissent.